## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KAREN L. RENO and LAWRENCE J. RENO,

    Plaintiffs,

v.

MY CREDIT GUY, INC.,

    Defendant.

Case No. 8:26-cv-00555

**JURY TRIAL DEMANDED**

## COMPLAINT

NOW comes KAREN L. RENO ("Karen") and LAWRENCE J. RENO ("Lawrence") (collectively "Plaintiffs"), by and through the undersigned, complaining as to the conduct of MY CREDIT GUY, INC. ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* as well as the Florida Credit Services Organization Act ("FCSOA") under Fla. Stat. § 817.7001 *et seq.* in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within, and a substantial portion of the events or omissions giving rise to the claims occurred within, the Middle District of Florida.

**PARTIES**

4. Plaintiffs are natural "person[s]," as defined by 47 U.S.C. §153(39), residing in Davenport, Florida, which lies within the Middle District of Florida.

5. Defendant is a credit repair organization offering consumers the ability to improve their credit through its offered services. Defendant is a limited liability company organized under the laws of Arizona with its principal place of business located at 1701 W D Street, Vinton, Iowa 52349.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

8. In approximately August of 2023, Plaintiffs were looking into financing options related to the sale and purchase of a new home, and their realtor referred them to Defendant in order to improve their credit scores.

9. Upon information and belief, Defendant paid Plaintiffs' realtor for Plaintiffs' referral.

10. Upon speaking with Defendant, Plaintiffs were sold on the variety of credit-improving services Defendant offered.

11. Defendant represented that part of its services would involve disputing and removing derogatory information from Plaintiffs' credit reports.

12. After reviewing Plaintiffs' credit reports, it informed Plaintiff that it would be able to get a substantial amount of the information removed from Plaintiffs' credit, regardless of whether the information was inaccurate, unverifiable, or otherwise could properly be removed from Plaintiff's credit reports.

13. Defendant further advised that its services included access to a "credit builder" credit card, which would help improve Plaintiffs' credit the more they used it.

14. It was represented that Defendant's services would take approximately 6 months to complete and that Plaintiffs' credit scores would improve substantially after the initial round of services were completed a couple of months after signing up.

15. Finding desirable the nature of Defendant's representations, Plaintiffs agreed to use Defendant's services.

16. Although both Plaintiffs were the subject of the services, only Karen was required to sign the contract between the parties.

17. At no point did Defendant provide Plaintiffs a counter-signed version of the contract.

18. Defendant charged Plaintiffs initial monthly charges totaling $275 per month for the first three months of services, with monthly payments totaling $150 being due thereafter for monthly "maintenance" services.

19. The services for which Plaintiffs were eventually charged were provided by Defendant prior to Plaintiffs agreeing to use Defendant's services and prior to the expiration of the three-day cooling period imposed under the CROA.

20. Plaintiffs were further provided the credit builder card through Defendant, which was represented as being a means through which their credit would improve – however, the card had the exact opposite effect and caused Plaintiffs' credit scores to drop.

21. Plaintiffs further made payments to Defendant for the dispute and removal related services for years, substantially longer than the several months they were led to believe it would take for the services to effective and to enjoy improve credit, and

in exchange have not enjoyed the extent or amount of credit improvement they were initially led to believe they would receive through Defendant's services.

22. Defendant was further unable to get the extent of negative information removed from Plaintiffs' credit as represented, and upon information and belief has submitted duplicative and repetitive disputes on a monthly basis challenging the same information that is not being removed.

23. Upon information and belief, Defendant failed to get the information removed because it was challenging items that were accurate or which otherwise had no reasonable basis to be removed from Plaintiffs' credit reports.

24. Defendant further falsely, deceptively, and misleadingly represented the increase in credit score that Plaintiffs would experience, and did so in order to extract payments from Plaintiffs in connection with services whose qualities and benefits were misrepresented to Plaintiffs.

25. Defendant further represented that it would, and upon information and belief subsequently did, submit disputes challenging information on Plaintiffs' credit reports without any reasonable indication that such information was inaccurate, obsolete, or could otherwise reasonably be removed.

26. Defendant thus falsely, deceptively, and misleadingly represented to Plaintiffs the extent to which they could have the accurate and correctly-reporting information removed from their credit.

27. Defendant's conduct evinces an overarching deceptive business model that actively commits fraud, and similarly attempts to commit fraud, on unwitting consumers, as Defendant's conduct is designed to make vulnerable consumers believe they will experience results that are completely unrealistic and which Defendant ultimately fails to deliver and failed to deliver to Plaintiff.

28. Upon information and belief, Defendant is engaged in a pattern and practice of misrepresenting the results consumers can expect through its services on a wide and persistent basis and engages in this conduct as a matter of course with all consumers with which it deals.

29. Plaintiffs have suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient and misrepresented services, further out of pocket expenses, as well as numerous violations of their state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

30. Plaintiffs repeat and reallege paragraphs 1 through 29 as though fully set forth herein.

31. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

32. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

    a. **Violations of CROA § 1679b(a)**

33. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

34. Defendant violated the above provisions of the CROA through the false and deceptive representations it made to Plaintiff regarding the efficacy of its offered services. Around the time Plaintiffs agreed to use Defendant's services, Defendant represented that they would experience an increase in their credit score, and that such results would be delivered shortly after Plaintiff signed up. Defendant subsequently

failed to deliver these results despite Plaintiffs making payments for years. Defendant's failure to deliver the represented results in the manner and time frame represented demonstrates the false, misleading, and fraudulent nature of the representations it made to induce Plaintiffs to induce their assent to its program.

35. Defendant further violated the above provisions of the CROA through its general misrepresentations regarding the parameters of its dispute capabilities and the information that could reasonably be challenged and removed from Plaintiffs' credit reports through Defendant's disputes. Defendant represented and suggested to Plaintiffs that it would be able to remove any information from Plaintiff's credit reports, regardless of whether it was inaccurate, obsolete, or otherwise could be removed from Plaintiff's credit. This is an inherently deceptive and misleading representation, as only inaccurate or obsolete information can be removed from consumers' credit profiles. Defendant misrepresented the information it could have removed in order to convince Plaintiffs it could remove the information that was harming their credit and convince them to use Defendant's services, despite knowing the extent to which it could not reasonably have the extent of desired information removed from Plaintiffs' credit.

36. Defendant further violated the above provisions of the CROA through its misleading and deceptive representations that Plaintiffs' "credit builder" card would assist in improving their credit. Despite Defendant's representations, the credit

builder card did not improve Plaintiffs' credit in the manner suggested and, in fact, had the exact opposite effect.

### b. Violations of CROA § 1679b(b)

37. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

38. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed. Upon information and belief, throughout the course of the parties' dealings, Defendant frequently assessed various charges and collected payment for services before such services were fully performed.

### c. Violation of CROA § 1679d

39. The CROA, pursuant to 15 U.S.C. § 1679d(a), prohibits credit repair organizations from providing services before (1) a written, dated, and compliant contract has been signed by the consumer; and (2) before the end of the 3-business day period beginning on the date the contract is signed.

40. Defendant violated § 1679d(a)(1) as it performed services for Plaintiffs in connection with a contract that blatantly fails to comply with the CROA's requirements.

41. Defendant also violated § 1679d(a)(1) by failing to get Lawrence's signature on the contract for services.

42. Defendant further violated § 1679d(a)(2) as it performed services before the end of the 3-business-day period beginning on the date the contract was signed.

43. 15 U.S.C. § 1679d(b) outlines the various requirements for credit repair organization contracts.

44. Defendant violated § 1679d(b) through the nature of its noncompliant contract which fails to comply with a number of the CROA's requirements.

    d.  **Violation of CROA § 1679f(b)**

45. The CROA, pursuant to 15 U.S.C. § 1679f(b), provides that "any attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under this subchapter shall be treated as a violation of this subchapter."

46. Defendant violated § 1679f(b) through its efforts to obtain Plaintiffs' waiver(s) of the protections provided by the CROA. Defendant seeks to cause Plaintiffs' to waive their rights, the available damages under the CROA, as well as any conduct stemming from its deceptive non-contractual representations by virtue of its merger and integration clause.

WHEREFORE, Plaintiffs, KAREN L. RENO and LAWRENCE J. RENO, respectfully requests that the Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FLORIDA CREDIT SERVICE ORGANIZATIONS ACT

47. Plaintiffs restate and reallege paragraphs 1 through 29 as though fully set forth herein.

48. Plaintiffs are "buyer[s]" as defined by Fla. Stat. § 817.7001(1).

49. Defendant is a "credit service organization" as defined by Fla. Stat. § 817.7001(2)(a).

　　a. **Violation of FCSOA § 817.7005**

50. Pursuant to Fla. Stat. § 817.7005(4), a credit service organization cannot "[m]ake or use any false or misleading representations or omit any material fact in

the offer or sale of the services of a credit service organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit service organization, notwithstanding the absence of reliance by the buyer."

51. Defendant violated the above referenced provision of the FCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

WHEREFORE, Plaintiffs, KAREN L. RENO and LAWRENCE J. RENO, respectfully requests that the Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Fla. Stat. § 817.706(1);

c. Awarding Plaintiff punitive damages pursuant to Fla. Stat. § 817.706(1);

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Fla. Stat. § 817.706(1); and,

e. Awarding any other relief as the Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: February 27, 2026            Respectfully Submitted,

                                    */s/Maxwell Brooks*
                                    Maxwell Brooks, Esq.

                              Counsel for Plaintiff
Sulaiman Law Group, LTD
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Telephone:(630) 575-8181
Fax: (630) 575-8188
mbrooks@sulaimanlaw.com